## THE AMERICAN GUANO COMPANY *vs.* THE UNITED STATES GUANO COMPANY and others.

Individuals can not obtain a right to the exclusive possession of islands in the sea, by virtue of discovery, irrespective of the Act of Congress passed in August, 1856.

Islands newly discovered by its citizens belong to the United States; and until some exclusive rights are obtained, in pursuance of the provisions of that statute, all the citizens of the United States possess equal rights to go there.

But where the plaintiffs, while an island remained in an unoccupied condition, by their agents went upon it, and expended money in erecting works and making improvements, and mining guano, which they conveyed to the shore; *Held* that they were entitled to be protected in the enjoyment of such property, and in the possession of the guano so mined.

One who, acting upon information obtained from another,-of the existence of a guano island discovered by the latter, takes the first actual possession thereof, can not claim an exclusive title as discoverer, under the act of Congress of August, 1856, even as against third persons.

THIS action is brought to establish the title of the plaintiffs to guano on an uninhabited island in the Pacific ocean. This island was discovered in September, 1842, by Captain George E. Netcher. He gave the island the name of Howland's island. He discovered on the island large quantities of guano, and took possession of it in the name of the United States. Nothing more was done by him in regard to the island, except landing upon it and fishing on its shores, at

that time.   He did not· return from the whaling voyage in which he was then engaged until 1846, when he gave notice of the discovery to Faber, a manufacturer of charts, by whom its location was noted on charts sold by him.   In 1848, Captain Netcher again visited the island, landed on it, and found it still uninhabited.   In March, 1856, Captain Taylor informed Captain Netcher that he had discovered an island in the Indian ocean with a large deposit of guano, and they agreed to unite their respective claims, and then made an agreement with Alfred G. Benson to become their agent for the sale of their rights and claims, and gave him a power of attorney for that purpose.   Shortly thereafter they gave to Benson a conveyance of their claims for the same purpose. Afterwards A. G. Benson, being embarrassed, with the con‑ sent of Netcher and Taylor, conveyed the said rights and claims to George W. Benson, upon the same trust.   On the 26th of October, 1858, George W. Benson, with the consent of Captains Netcher and Taylor, and A. G. Benson, conveyed the same rights to Egbert Benson and others, in trust for an association to be organized as the United States Guano Com- pany.   In November, 1858, these trustees conveyed the rights and claims of Netcher and Taylor back to George W. Benson, who, thereupon, conveyed the same to the United States Gu- ano Company, which had become incorporated.   All the con- veyances were assented to by Captains Netcher and Taylor, and a valuable consideration was paid therefor by the com- pany.   In October, 1856, Netcher and Taylor assert that they authorized Arthur Benson to take possession of the island for them, which they claim he did on the 5th of Feb- ruary, 1857.· He then returned to New York, and on the 28th of April, 1857, gave information to Captain Netcher of his doings.'   It must be remembered that Arthur Benson was at this time in the plaintiffs' employ in regard to the other island. On the 2d of May, 1857, A. G. Benson,. as the assignee of Captain Netcher, made an application to the secretary of state of the United States, to have. his discovery recognized

under the act of congress, passed August 18, 1856. When Arthur Benson took possession, in 1857, he built a house on the island and left a notice that he had taken possession of the island as the property of A. G. Benson. It is also shown that the defendants, the United States Guano Company, became incorporated in 1858, and that in 1860 they were recognized by the United States government as the assignees of the discoverer of Howland's Island. That the bond required by the statute was given and a proclamation issued by the secretary of state declaring that company to be the owners of Howland's Island, and entitled to the protection of congress.

In 1859 the United States Guano Company took measures for mining the guano on the island, and a vessel was sent to the island in February, which vessel arrived in June, and was driven away by persons sent there by the plaintiffs.

Difficulties afterwards took place between the agents of both companies in attempts to get the possession of the island, and to take guano therefrom.

On these proofs the defendants moved to vacate the injunction granted to the plaintiffs, restraining the defendants, their agents and servants, from landing upon the island, or occupying the same, or removing any guano therefrom, or mining the same, and also from interfering with the plaintiffs or their exclusive right of mining guano thereon.

In opposition to this motion, the plaintiffs claimed that in April, 1857, the plaintiffs were organized as a corporation, of which Alfred G. Benson was president; that the company was organized under an arrangement with Benson and Turner to take possession of Baker's Island and such other islands as Turner and Benson had any knowledge of or as might be discovered; that the company purchased Baker's Island, and afterwards James' Island. Inquiry was then made as to the third island, when Benson said, "I have got that right," and the plaintiffs rested satisfied; but although repeatedly spoken to on the subject, he did not name the island or disclose its

position; that afterwards they were told it was Howland's Island. That Arthur Benson, son of A. G. Benson, was sent out by them as a private association before they were incorporated, in October, 1856. The instructions from A. G. Benson to his son did not name Howland's Island, and on the discovery of this omission by the secretary, he told Arthur, "Of course, all the islands you discover and touch at, you will take possession of for the benefit of the company," to which he assented.

In February or March, 1857, A. G. Benson resigned as president. On Arthur's return, he made a report of his proceedings, but did not report Howland's Island, for the reason that it was not in his instructions, but admitted orally that he had taken possession of all the islands for the company.

It also appeared by the affidavit of Charles H. Judd, that at the request of the American Company, he went from Honolulu to Howland's Island with Arthur Benson, and arrived there on the 5th of February, 1857, and then landed and took formal possession in the name of the United States, on behalf of A. G. Benson and his associates. They erected a house and took samples. They raised the American flag and left it flying on the island.

That he went again, in March, 1859, as the agent of the plaintiffs, and renewed in their name the possession taken by Arthur Benson, in 1857, and by Lewis, in 1858.

A large amount of evidence was also given as to the acts of Arthur Benson, as to the state of the island and guano upon it, and other matters not necessary to be referred to in the decision of this appeal.

Upon the hearing at special term, the motion to dissolve the injunction was denied, and the defendants appealed to the general term.

*James Emott,* for the appellants.

*J. R. Whiting,* for the respondents.

American Guano Company *v.* United States Guano Company.

*By the Court,* INGRAHAM, P. J. The main question involved in this appeal is whether either of the parties has the exclusive right to the guano on this island, and to the possession of it.

The only grounds on which the plaintiffs can claim such rights must be founded on the supposed discovery of Arthur Benson, when sent out by the company as their agent to take possession of Baker's and James' Islands, and such other islands as might be discovered.

It seems to be conceded that his instructions contained no reference to Howland's Island, by name. Whether A. G. Benson, the president of the association, intentionally or accidentally omitted it from his instructions, is not, in my judgment, material to the decision of this case. Neither the plaintiffs nor the defendants could obtain a right to the exclusive possession by virtue of discovery, irrespective of the act of congress, passed in August, 1856. Such discovery belongs to the United States, and until some exclusive rights are obtained in pursuance of the provisions of that statute, all the citizens of the United States possess equal rights to go there. (*Johnson* v. *McIntosh,* 8 *Wheat.* 543.)

Even if it could appear from the facts in this case, that A. G. Benson, having the control of the title of the discoverers of the island had led his associates to suppose he would, at a subsequent period, turn it in as a part of the property of the company when incorporated; still, as such transfer was never completed, and as he held the title from the assignors merely for the purpose of selling for their account, there can be no pretense that any title ever vested in them, or that they had ever placed themselves in a position by which they could enforce a conveyance of such title, without compensation to the real owners of the claim.

Nor can the plaintiffs ever claim title to this island, or the guano upon it, as the discoverers. They never were such; when they sent their agents, first Arthur Benson, and then Dr. Judd, they had full knowledge of the existence of the

island, and of the discovery of it by Netcher long before. The source of their information was their president, who was at the time the agent of Netcher and Turner in the sale of their claims to discovery. As their president, having knowledge of these facts, his knowledge is to have the same effect as knowledge of the company, so that in no event could the company be freed from notice that Benson was not the owner, and that Netcher and Turner had rights which they could not obtain except by purchase from them or their agent.

Nor even if they were ignorant of the discoveries of Netcher previously, and were not bound by the knowledge of their president, would their landing on the island give them any rights. It had been previously discovered, and the discovery made known in this country. The act of congress of August, 1856, gives no right except to the first discoverer, and requires him to give notice, as soon as practicable, to the state department.

Under neither of these provisions can the plaintiffs place themselves so as to be entitled to exclusive possession.

Nor have they ever made the application to the government and obtained from the proper authority the right to the exclusive possession. Without it, they, even if the discoverers, could exercise no exclusive control, and could prevent no other citizens from doing anything they could do with the materials found upon the island, unless they had reduced the same to possession.

It is, therefore, very clear that the plaintiffs have no title, either by discovery, or by authority from the United States, to claim the exclusive possession and right to take guano from this island, as against the defendants.

The defendants claim to be vested with such exclusive right under proceedings taken by them, through which they obtained from the secretary of state a declaration that they were entitled to the exclusive right and privilege of occupying the island, for the purpose of obtaining guano thereon, and of selling and delivering the same. It is not necessary

American Guano Company *v.* United States Guano Company.

for the purposes of this appeal, for us to decide upon the validity of this proceeding before the secretary of state, or of this claim as now made. It is more proper to leave the decision of that question to the trial of the cause, or such proceedings as may be taken to have it set aside.

There are facts appearing here which are sworn to in the plaintiffs' papers, and not contradicted, which entitle the plaintiffs to protection on a preliminary injunction. It may well be doubted whether any such exclusive right can be granted to a discoverer who does not comply with the provisions of the statute in taking possession on the discovery and keeping such possession until his title is confirmed by the government. He can not rest on a mere discovery without possession. There never was any such possession until the island was visited by Arthur Benson, and his possession was involved in doubt, as he was not in the defendants' employ, and does not appear to have had any instructions from them, while his expenses were borne by the plaintiffs. In whose service he was, and by what authority he was acting, must be decided hereafter. Enough, however, does appear to show that from the first discovery by Netcher, in 1842, until the visit of Arthur Benson, in 1857, no actual possession had been taken by any one, and that Benson's possession was only for a short period. That in 1858, when visited by Lewis, it was uninhabited, and remained as when left by Benson, and that, while in that unoccupied condition, the plaintiffs, by their agents, went upon the island, expended large sums of money and mined large quantities of guano, which was conveyed to the shore previous to September, 1861, when the defendants landed and took possession of the same.

In regard to this property, the plaintiffs are entitled to protection. The money was expended and the work performed while the island was uninhabited, and while no possession had been taken or continued by the discoverer. The only attempted possession is claimed by both parties, and the

alleged interference with the plaintiffs' property is not denied as fully as it should be to free them from the charge.

Upon an island belonging by discovery to the United States, of which no possession or exclusive rights have been obtained, I have before remarked that all citizens have equal rights, and if, during such period, while it is so unoccupied, money is expended or property placed upon it, it is as much entitled to protection as if it belonged to the discoverer. The declaration from the secretary of state appears to have been made in August, 1860, while the moneys expended, work done and property placed upon the island, appear to have been all previous to that time. With this the defendants have no right, and the injunction, so far as it protects this property, should be maintained.

My conclusions are :

First. That the plaintiffs have no right to the exclusive possession of this island or of the guano upon it, and have no right to exclude the defendants from the island, or from mining guano thereon. This part of the injunction should be vacated.

Second. That the plaintiffs, having expended money in the construction of works, and placing improvements upon the island, and in mining guano, are to be protected in the enjoyment of such property, and in the possession of the guano so mined, and that so much of the injunction as restrains the defendants from interfering with the works, or property, or guano mined by the plaintiffs, or preventing them from removing the same, should be continued.

Third. That the defendants should be restrained from any interference with the plaintiffs or their agents in mining guano and removing the same, provided that in such mining the plaintiffs shall not interfere with the property or works of the defendants, and that the injunction should be so modified.

[New York General Term, May 2, 1865. *Ingraham, Geo. G. Barnard* and *Clerke,* Justices.]